UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

CALIFORNIA UNION OF SAFETY
EMPLOYEES, JOSE M. PHILLIPS,
et al.,

        NO. CIV. S-90-167 LKK/GGH

    Plaintiffs,

  v.                        O R D E R

STATE OF CALIFORNIA, et al.,

    Defendants.
_____/

    Plaintiffs brought suit under 29 U.S.C. § 216(b) of the Fair Labor Standards Act (FLSA), alleging that they were owed unpaid overtime wages. All individual claims have been resolved but not all funds been distributed because there are 128 consenters who cannot be located.[1] Pending before the court is a motion for cy pres distribution of unclaimed funds filed by plaintiffs.

---

[1] As of July 12, 2005, undistributed funds in the amount of $41,873.92 and accrued interest in the amount of $600.30 are held in the trust accounts of the law firm of Carroll, Burdick & McDonough.

1

Defendants oppose, asserting that the funds must be placed with the State Controller in the Unclaimed Property Fund pursuant to California Code of Civil Procedure § 1518.

**ANALYSIS**

It is established that "[f]ederal courts have broad discretionary powers in shaping equitable decrees for distributing unclaimed class action funds. Six Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1307 (citing Van Gemert v. Boeing Co., 739 F.2d at 730, 737 (2d Cir. 1984)). As I explain below, consistent with governing federal law, the unclaimed funds should be distributed, per the cy pres doctrine, to the Legal Aid Society-Employment Law Center. See Six Mexican Workers, 904 F.2d at 1301.

**A.   CAL. CIV. PROC. CODE § 1518 IS INAPPOSITE**

Defendants argue that California Code of Civil Procedure § 1518 "mandates" the escheat of the unclaimed funds. Opp'n at 3. Defendants fail to explain why California law rather than federal law governs the matter, and no good reason presents itself.[2]

////
////

---

[2] Even if California law governed the matter, it seems apparent that Cal. Civ. Proc. Code § 384 rather than § 1518 would be the governing state statute. That statute, by its terms, does not disturb the application of a cy pres remedy. See Cal. Civ. Proc. Code § 384(c). The court also notes that § 384 is consistent with Six Mexican Workers in that it provides for judicial discretion and suggests that the distribution "further the purposes of the underlying causes of action." See Cal. Civ. Proc. Code § 384; Six Mexican Workers, 904 F.2d at 1307.

2

**B.   DISTRIBUTION TO THE LAS-ELC IS APPROPRIATE**

The Ninth Circuit has explained that once a district court finds that certification of a class is appropriate, the court must "formulate a procedure for distributing unclaimed funds," Six Mexican Workers, 904 F.2d at 1307, which may include at least three means for the disposition of unclaimed funds: 1) cy pres or fluid distribution; 2) escheat to the government; and 3) reversion to defendants.[3]  Id. at 1307.  The Ninth Circuit, however, cautioned that "[t]he district court's choice among distribution options should be guided by the objectives of the underlying statute and the interests of the silent class members."  Id.

Where, as here, "the only question is how to distribute the damages, the interests affected are not the defendant's but rather those of the silent class members."  Id. at 1307.  Under Six Mexican Workers, the court may consider cy pres distribution for the purpose of distributing the unclaimed funds.

Having considered the parties' papers submitted herein and arguments raised during oral argument, I conclude that cy pres distribution would further the objectives of the FLSA and would further the interests of the absent class members.

The FLSA was enacted subsequent to a congressional finding of "labor conditions detrimental to the maintenance of the minimum

---

[3] The Circuit Court also noted that a fourth option is pro rata distribution of funds, but "did not express a view as to the propriety of this distribution method."  Six Mexican Workers, 904 F.2d 1307 n. 4.  The parties do not advocate this method of distribution, and the court will not consider it further.

standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a)(2005); <u>Torres-Lopez v. May</u>, 111 F.3d 633, 638 (9th Cir. 1997). The statute established a minimum wage, regulations concerning maximum hours, recordkeeping and reporting requirements, child labor provisions, and a system of civil and criminal penalties for violations of the FLSA. <u>Id.</u> (citing 29 U.S.C. §§ 201-219).

Plaintiffs explain that LAS-ELC's wage and hour work is closely aligned with the interests of the class and engages in various activities which relate to securing the rights of workers to be paid wages due to them. Notably, the LAS-ELC's Community Legal Services Program and Claims Project provides free legal information and counseling to low-income workers on wage and hour issues. Gaitley Dec. at ¶¶ 2, 6. The Claims Project also engages in administrative advocacy providing direct representation to employees pursuing unpaid wage claims. Gaitley Dec. at ¶ 6. The organization has secured over $325,000 in unpaid wages in 2004 alone. Mot. at 7. The LAS-ELC also files amicus briefs and litigates wage and hour issues in state and federal court. Graff Dec. at ¶ 8, Gaitley Dec. at ¶ 10. Further, LAS-ELC advocates for the legislative expansion of wage and hour protections for workers. Gaitley Dec. at ¶ 10.

////
////
////
////

4

1      In short, plaintiffs have tendered sufficient evidence showing
2 that there is a close connection between the interests of the
3 absent class members and the work performed by the LAS-ELC's Claims
4 Project.[4]
5      Accordingly, plaintiffs' motion for cy pres distribution of
6 unclaimed funds to the Legal Aid Society-Employment Law Center is
7 GRANTED.
8      IT IS SO ORDERED.
9      DATED:   October 12, 2005

                                  /s/Lawrence K. Karlton
                                  LAWRENCE K. KARLTON
                                  SENIOR JUDGE
                                  UNITED STATES DISTRICT COURT

---

[4] During oral argument, defendants for the first time argued that the funds should escheat to the State because the Controller's office has implemented a new system which would more easily facilitate locating the consenters. Plaintiffs object, explaining that defendants have had the opportunity since 2001 to have the Controller locate the consenters, but have failed to do so. As I explained to the parties during oral argument, based on the record before the court, I am unconvinced that escheating to the State would be the best means of resolving this dispute.